IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 





NO. 3-91-043-CR





DAVID H. GOSHEN,


alias: SLY,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT



NO. 106,255, HONORABLE BOB PERKINS, JUDGE PRESIDING



 





 After finding appellant guilty of the offense of aggravated robbery, Tex. Penal
Code Ann. § 29.03 (West Supp. 1992), the jury assessed punishment at sixty years confinement. 
Appellant asserts three points of error, contending that the trial court erred: (1) in limiting the
cross-examination of the accomplice witness; (2) in failing to grant appellant's motion for mistrial
because of the prejudicial argument of the prosecutor; and (3) in admitting evidence of extraneous
offenses to prove intent. We overrule appellant's points of error and affirm the judgment of the
trial court.

 Abolfath Tehrani, an employee of the Circle K Store on South Congress Avenue
in Austin, died as a result of gunshot wounds inflicted during a robbery at the store on March 19,
1990. At the time of the offense, appellant was eighteen years of age and his juvenile companion,
E. E., was fifteen years of age.

 Appellant's first point of error is based on the court's failure to allow him to cross-examine E. E. about whether he had taken a polygraph examination. Assistant District Attorney
Christine White testified that the State agreed to recommend that E. E. receive ten years
confinement in the Institutional Division for Juveniles in return for his full cooperation with the
State. Out of the presence of the jury, E. E. testified that as part of the plea bargain he agreed
to take a polygraph examination, but an examination was never given.

 Appellant urges that he should have been allowed to offer testimony of this
provision of the plea bargain and the fact that E. E. was never given the examination. The trial
court ruled that the portion of the agreement relative to E. E. agreeing to take the polygraph
examination was admissible, but disallowed, over appellant's objection, any testimony relative to
E. E. never having received the examination. E. E. was cross-examined by defense counsel about
his agreement to take a polygraph examination as part of the plea bargain. Pursuant to the court's
ruling, defense counsel did not ask E. E. about whether he ever took the examination. Appellant
contends that the court's limitation of his cross-examination denied appellant the right to confront
the witness.

 We first examine the matter of the admissibility of evidence relating to polygraph
examinations. In Sparks v. State, 820 S.W.2d 924, 927 (Tex. App.--Austin 1991, no pet.), this
court stated:



Because of its inherent unreliability, and its tendency to be unduly persuasive, the
results of a polygraph examination are not admissible in Texas for any purpose. 
The results of a polygraph test may be disclosed not only by an affirmative
statement of a witness, but merely by a question revealing that a polygraph
examination has been administered.



(Citations omitted).

 In support of his argument that "a party can `open the door' to the testimony,"
appellant cites Rodriguez v. State, 340 S.W.2d 61 (Tex. Crim. App. 1960), as having facts similar
to the instant cause. In Rodriguez, the court held that the defendant received ineffective assistance
of counsel in the trial court because of counsel's action in asking his client about an offer to take
a lie detector test. The court stated that defense counsel's question authorized the State to offer
proof that defendant declined to take a polygraph test. Unlike Rodriguez, appellant attempts to
gain admission of inadmissible evidence through a door that he, rather than the State, attempted
to open. While an adversary may open the door to otherwise inadmissible evidence, we do not
know of any authority that permits a party by its own initiative to bootstrap inadmissible testimony
into evidence. Appellant complains that the "jury could easily infer that [E. E.] complied with
the agreement and passed the polygraph." If such an inference were gleaned by the jury, it was
the result of the appellant's own action in offering evidence that E. E. agreed to take the test.

 Appellant urges that he was not given an opportunity to exercise the great latitude
afforded a defendant to show any fact which would tend to establish bias or motive on the part of
the witness. Assuming, arguendo, that the proffered cross-examination comes within the ambit
of relevant cross-examination, it may be excluded if its probative value is substantially outweighed
by the danger of unfair prejudice or misleading the jury. Tex. R. Crim. Evid. 403. We hold that
the inferences a jury may make from the taking or not taking of a test, long deemed unreliable,
outweigh the probative value of such evidence. Appellant's first point of error is overruled.

 In his second point of error, the appellant contends that the court erred in failing
to grant his motion for mistrial because of the prosecutor's argument contradicting the law given
by the court in its charge to the jury. To place the prosecutor's argument in its proper context
requires a review of the testimony of the State's witness, Pedro Medina. Medina, identifying
himself as the leader of the Tenth Syndicate gang, testified that E. E., also known as "Ice," and
the appellant, known by the name of "Sly," were either members or hung around "The Kings,"
another gang. On the night in question, Medina was in a room at the South Congress Inn with
E. E., appellant, a person known as "Smurf," and some girls. They needed money and the
subject of robbing or mugging someone was discussed. Medina first testified that he thought he
gave his ".38 special hollow point" gun to one of them, "I think I gave it to 'Ice.'" Subsequently,
Medina related that "Smurf" gave the gun to them and that appellant and E. E. departed with the
gun. When they returned in about "20-25 minutes," they (appellant and E. E.) stated that the
store clerk at the Circle K got shot. Medina testified that he did not know who shot the victim. 
The prosecutor asked Medina to review a written statement he had given shortly after the crime
in which Medina stated that "Sly" (appellant) told him that he had shot the store clerk. Medina
denied making this statement.

 In final argument, the prosecutor noted that Medina had equivocated about who
gave the gun to whom before "Sly" and "Ice" left the motel room, and that "he [Medina] kind of
forgets" when they (appellant and E. E.) came back (following the crime). The following
argument by the prosecutor forms the basis of the appellant's second point of error:



 Now, State's Exhibit 37 you may wonder about, but this is the part of his
statement that could be introduced because normally a statement of a witness
cannot be introduced. But because [he] equivocated on a part of it, it can be
introduced. He said, "Oh, yeah, no, they didn't tell me, they didn't tell me who
did what," at one point. At another point I said, "Well, yeah, they did." But he
equivocated on this. And you will have this here to look at exactly what he gave
the statement about what each individual said. Remember he was like, "Well,
yes." "Well, no. They just said -- --"


 MR. KEINARTH [defense counsel]: I'm going to object to that as arguing
against the Court's instruction on the purpose for that particular exhibit, that it's
only to impeach Mr. Medina.


 MR. ANSCHUTZ [prosecutor]: Your Honor, I'm arguing what Mr.
Medina said in this courtroom.


 THE COURT: I'll overrule the objection.



 Appellant contends that the prosecutor's argument constituted an attempt to use
Medina's out-of-court statement to prove that the appellant was the person who pulled the trigger. 
Appellant urges that the court should have granted a mistrial since the issue of who pulled the
trigger was crucial.

 The court instructed the jury at the time of the admission of the statement and in
its charge that when a witness is impeached by a statement not made during the trial, the
impeachment evidence is not original evidence against the accused, but may only be considered
as it may affect the weight to be given the testimony of the witness. See Hughes v. State, 158
S.W.2d 532, 533 (Tex. Crim. App. 1942).

 The prosecutor's argument may be construed to imply that the jury should consider
evidence admitted solely for the purpose of impeachment as proof of the appellant's guilt. 
However, this implication is clouded by the prosecutor's argument that immediately followed,
"I'm arguing what Mr. Medina said in the courtroom." The prosecutor's argument may also be
construed as asking the jury to note the equivocating nature of Medina's testimony as evidenced
by his testimony and the statement he had given shortly after the crime. A prosecutor's argument
should not be given an improper meaning unless such is a "necessary construction of the
prosecutor's remark." Gardner v. State, 730 S.W.2d 675, 700 (Tex. Crim. App. 1987), cert.
denied, 484 U.S. 905 (1988). We hold that the court's instruction and the prosecutor's
subsequent statement enabled the jury to overcome any implication that the statement admitted for
the limited purpose of impeachment was proof of the appellant's guilt. No error is shown in the
court's action in declining to grant a mistrial. Appellant's second point of error is overruled.

 In his third point of error, appellant complains of the court's admission, over
appellant's objection, of E. E.'s testimony that he and appellant had committed recent offenses
involving convenience stores. E. E. testified that he and the appellant had entered convenience
stores on three or four previous occasions to steal items. On each occasion they would curse the
store manager and knock merchandise off the counters. E. E. related that they wanted to make
the manager mad to encourage him to kick them out of the store. This would furnish them with
"a reason to take something." In response to a question as to what they would take, E. E. stated,
"Just cigarettes." When the police investigated, E. E. and appellant would be able to tell the
police that they "took stuff because the clerk was mad" and kicked them out of the store. E. E.
related that neither he nor the appellant possessed a gun on any of these occasions.

 Appellant contends that the extraneous offenses do not come within any of the
exceptions to the rule prohibiting the admission of evidence of other offenses. See Tex. R. Crim.
Evid. 404(b). Appellant assigns two reasons why the extraneous offenses are inadmissible. First,
the extraneous offenses are not relevant since the material issue was who pulled the trigger and
not whether E. E. and the appellant were accidentally in the store. Second, the extraneous
offenses are too dissimilar to the instant crime to be relevant since the propensity to commit Class
C misdemeanor theft does not necessarily show the propensity to commit murder and aggravated
robbery. The State urges that it is appropriate to show modus operandi through extraneous
offenses where intent is a material issue. The State points to the similarities in the extraneous
offenses and the instant crime as the occurrence of theft in a convenience store, appellant and E.
E. provoking the clerk and the cooperation of the two in planning a theft.

 We find it unnecessary to make a determination of whether the extraneous offenses
come within the exception set forth in Rule 404(b). Assuming that the admission of the
extraneous offenses was error, the sounder approach is to determine whether the error is such as
to require reversal. Reversal is mandated unless the reviewing court "determines beyond a
reasonable doubt that the error made no contribution to the conviction or the punishment." Tex.
R. App. P. 81(b)(2). In Harris v. State, 790 S.W.2d 568, 585-88 (Tex. Crim. App. 1990), the
court noted that while Rule 81(b)(2) mandates that the reviewing court focus on whether the error
contributed to the conviction or punishment, it must also determine whether such error may
possibly have prejudiced the juror's decisionmaking process.

 The relative severity of the offense of theft of "just cigarettes" and a crime
involving murder and aggravated robbery defies comparison. The entire factual context of the
instant cause involves the activities of teenage gangs. We believe a jury would consider the theft
of "just cigarettes" as being a commonplace activity for gang members. Theft of cigarettes pales
in comparison to the more serious violations by teenage gangs that are covered by the media on
a daily basis. We conclude beyond a reasonable doubt that the complained-of evidence did not
contribute to the conviction or the punishment of the appellant nor did it prejudice the jury's
decision making process. Appellant's third point of error is overruled.


 The judgment is affirmed.



 

 Tom G. Davis, Justice

[Before Justices Jones, B. A. Smith and Davis*]

Affirmed

Filed: October 21, 1992

[Do Not Publish]





































* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).